UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| POLICEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION OF ILLINOIS, UNIT 156-SERGEANTS and STEPHEN FRANKO, | ) ) ) ) ) | No. 17 C 8469 |
| | ) | Judge Jorge L. Alonso |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Having been suspended from his job as a Police Sergeant without pay and had his hearing put off indefinitely, plaintiff Stephen Franko ("Sgt. Franko") and his union (plaintiff Policemen's Benevolent and Protective Association of Illinois, Unit 156-Sergeants, the "Union") filed a two-count complaint against defendant City of Chicago. In Count I, Sgt. Franko seeks relief under § 1983 for violation of his constitutional right to due process. In Count II, plaintiffs seek, in the alternative, to compel defendant to arbitrate the grievance the Union filed on Sgt. Franko's behalf. Defendant moves to dismiss. For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss.

I.  BACKGROUND

The Court takes as true the allegations in plaintiffs' complaint.[1]

---

[1] In considering a motion to dismiss, a court may not consider matters outside the pleadings without converting the motion to a motion for summary judgment. Fed.R.Civ.P. 12(d). The pleadings include documents attached to the complaint. *See* Fed.R.Civ.P. 10(c).

The Union and the defendant are parties to a collective bargaining agreement ("CBA"). That collective bargaining agreement includes a grievance procedure. (CBA at 13-15/ Docket 1-1 at 20-22). The CBA states, among other things:

> A grievance is defined as a dispute or difference between the parties to this Agreement concerning the interpretation and/or application of this Agreement or its provisions. The separation of a Sergeant from service and suspensions in excess of thirty (30) days are cognizable only before the Police Board and shall not be cognizable under this procedure . . .
>
> The grievance procedure provisions herein and the Police Board procedures are mutually exclusive, and no relief shall be available under both, provided that, if the Police Board reduces discipline of over thirty (30) days to thirty (30) days or under, the Sergeant may grieve the reduced discipline.

(CBA at 13-14/Docket 1-1 at 20-21). The collective bargaining agreement goes on to say:

> A sergeant who receives a recommendation for suspension of eleven (11) days or more, not including a suspension accompanied by a recommendation for separation, may file a grievance challenging and seeking review of that recommendation.

(CBA at 20/Docket 1-1 at 27). The grievance procedure allows either party to seek arbitration. (CBA at 15/Docket at 1-1 at 22).

On August 30, 2016, defendant's Superintendent of Police filed charges with the Police Board against plaintiff Sgt. Franko and four other officers. The charges recommended that Sgt. Franko be separated from service (i.e., discharged) for violating the Police Department's Rules of Conduct in the aftermath of a police-involved shooting in late 2014. Months earlier, the Police Officer involved in the shooting had been charged with a crime in connection with the shooting.

Days later, on September 1, 2016, Sgt. Franko was served with a suspension notification. The notice stated that he would be suspended without pay for thirty days, beginning September

2, 2016. The notice also stated that "charges have been filed with the Chicago Police Board seeking the separation" of Sgt. Franko. Docket 1-2.

The Police Board operates under Rules of Procedure. Those rules state, in relevant part:

> [N]o later than seven (7) days after service of the notice of suspension a member of the Police Board or its Hearing Officer shall review the order of the Superintendent together with the reasons therefor and shall at that time determine whether suspension pending the disposition of charges is warranted.

Police Board Rules of Procedure at IV.D./Docket 1-3 at p. 8. Plaintiffs allege that on September 7, 2016 and "[p]ursuant to Rule IV.D.," a Hearing Officer for the Police Board concluded that "a continuing suspension beyond thirty (30) days without pay was warranted for Sergeant Franko pending the disposition of the Board charges filed against him." (Complt. ¶ 22).

By early January 2017, the prosecutor prosecuting the police officer involved in the shooting moved to intervene in plaintiff's Police Board proceedings and asked the Police Board to stay those proceedings. Soon thereafter, the judge presiding over the criminal case recommended that plaintiff's Police Board proceeding be stayed. By May, the police officer involved in the shooting also requested that the Police Board stay the proceedings. Sgt. Franko objected to the stay, because, in the meantime, he was not working and was not getting paid. Sgt. Franko argued that he had a constitutional right to due process, which included a prompt hearing.

On June 12, 2017, the Police Board issued an order granting the stay. It noted that the grand jury was still considering charges against Sgt. Franko and three of the officers charged by the Superintendent. The Police Board explained, among other things:

> Here, it is quite clear that when the Superintendent presents his evidence in the discharge case before the Police Board, he will rely extensively on . . . *Garrity*-protected and coerced statements all five of the respondents made during the investigation . . . The Board also finds and acknowledges that its proceedings in these cases will be public and publicized. . . . The exposure of these statements

3

> may well then require the dismissal of the criminal case against [the Police Officer involved in the shooting] and any other criminal cases later brought [against the other respondents, including Sgt. Franko]. Given the importance of the criminal case . . . to our city, and the need to determine if criminal liability is appropriate, it would be a disservice to all . . . to go forward with the Police Board discharge cases at this time.

Docket 1-4 at 8. The Police Board went on to say:

> Given the due-process concerns related to suspending these officers without pay during the period of an indefinite stay of their cases, the Board now finds that there is no basis for their continued suspension pending the hearings on the charges against them, and therefore vacates the determinations by the hearing officer that suspension pending the disposition of charges is warranted. The Board . . . stands ready to try their cases once going forward with the Police Board cases will no longer prejudice or jeopardize any criminal case or constitutional right. Their cases will remain on the Board's docket of cases.

Docket 1-4 at 10.

Defendant reinstated Sgt. Franko, effective June 14, 2017. By the middle of July, it was clear to Sgt. Franko that defendant would not grant him back pay or benefits for the time he had been suspended unless he prevailed at his Police-Board hearing, which had been delayed indefinitely. The Union filed a grievance on Sgt. Franko's behalf. Defendant asked that the grievance be withdrawn and refused to arbitrate the issue.

On November 14, 2017, the prosecutor announced that Sgt. Franko would not be indicted. Plaintiffs filed this suit four days later.

## II.  STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

4

*Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (2009) (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

## III. DISCUSSION

### A. Plaintiffs' claim to enforce the arbitration agreement

The complaint asserts two claims, and Count II is brought only in the alternative. The Court considers it first. In Count II, plaintiffs seek to compel defendant to arbitrate the grievance over defendant's failure to pay back pay for the nine months Sgt. Franko was suspended.

Defendant moves to dismiss Count II, arguing that the collective bargaining agreement between the parties does not provide for arbitration of this matter.[2]

It is up to the Court, rather than an arbitrator, to decide whether a dispute is subject to arbitration, except where the parties have clearly provided otherwise. *AT&T Technologies, Inc. v. Communications Workers of Amer.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *International Broth. of Elec. Workers, Local 21 v. Illinois Bell Tel. Co.*, 491 F.3d 685, 687 (7th Cir. 2007). "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T*, 475 U.S. at 649 (quoting *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

In this case, it is clear to the Court that plaintiffs' claim to compel arbitration is barred by the terms of the collective bargaining agreement. Although the collective bargaining agreement generally allows members first to file grievances and then to arbitrate certain discipline matters, the terms of the collective bargaining agreement plainly exclude from the grievance/arbitration procedure both separation from service and suspensions in excess of 30 days. Consideration of those issues is clearly and explicitly reserved for the Police Board. (CBA at 13-14/Docket 1-1 at 20-21) ("The separation of a Sergeant from service and suspensions in excess of thirty (30) days

---

[2] Plaintiffs bring this claim under the Illinois Arbitration Act. The Court notes that it could never consider this claim in the alternative under the state-law act. If Count I drops out of the case, the Court would relinquish jurisdiction of Count II, over which it has no independent basis for jurisdiction. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) ("only in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction" once federal claims have fallen out of the case before trial). Nonetheless, the Court could consider plaintiffs' claim under § 301 of the Labor Management Relations Act, which grants the Court jurisdiction to enforce an arbitration clause in a collective bargaining agreement. *See AT&T Technologies, Inc. v. Communications Workers of Amer.*, 475 U.S. 643, 646 (1986); *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

are cognizable only before the Police Board and shall not be cognizable under this procedure."). The collective bargaining agreement further confirms the point by explicitly stating that the grievance/arbitration procedure is separate from Police-Board actions and that members are allowed one or the other, not both. (CBA at 14/Docket 1-1 at 21) ("The grievance procedure provisions herein and the Police Board procedures are mutually exclusive, and no relief shall be available under both"). Nor does 9B require grievance and arbitration. That provision also excludes from the grievance/arbitration process a recommendation for a suspension that is combined with a recommendation for separation. (CBA at 20/Docket 1-1 at 27) (allowing for grievances challenging "a *recommendation* for suspension of eleven (11) days or more, *not including a suspension accompanied by a recommendation for separation*.") (emphasis added).

Here, it is clear from plaintiffs' complaint that the discipline Sgt. Franko faces is a suspension greater than thirty days and a separation from service. (Complt. ¶¶ 19-20; Docket 1-2). The plain language of the CBA establishes that this is not a discipline matter that is subject to the grievance/arbitration procedure. Instead, such discipline is reserved for the Police Board to consider.

To be sure, the CBA also provides that *if* the Police Board reduces a suspension to fewer than thirty days, then the Sergeant can grieve the reduced discipline. Plaintiffs have not alleged that the Police Board reduced Sgt. Franko's suspension to fewer than thirty days. To the contrary, plaintiffs allege that the matter of Sgt. Franko's discipline remains on the Police Board's docket. The Police Board has merely stayed the proceeding. Although the Police Board concluded that Sgt. Franko should be reinstated so that he would not remain suspended (and unpaid) during the indefinite stay of the Police Board proceedings, that is not to say the Police Board reduced his suspension to fewer than 30 days. Sgt. Franko is still subject to a separation

7

recommendation, which remains pending before the Police Board. Even if it could be said that the Police Board reduced his discipline, Sgt. Franko was still suspended from work, without pay, for about nine months, a period of time greater than 30 days.

The collective bargaining agreement plaintiffs attached to their complaint does not require defendant to arbitrate Sgt. Franko's discipline. That matter remains where it belongs, in front of the Police Board.

Count II is dismissed with prejudice, and defendant's motion to dismiss is granted as to Count II.

### B. Sgt. Franko's due process claim

The Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Due process is "flexible and calls for such procedural protections as the particular situation demands. *Mathews. v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1961)); *see also Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 571 (7th Cir. 2017). In determining what process is due, a court considers:

> three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 335.

According to plaintiffs' complaint, effective September 2, 2016, Sgt. Franko was suspended without pay with a recommendation for separation. Within days, a Police Board hearing officer submitted a memorandum stating that a continuing suspension beyond thirty (30) days, without pay, was warranted. The matter has yet to come up for a final hearing before the

8

Police Board, because the Police Board has stayed the matter *indefinitely*. Thus, Sgt. Franko has gone twenty-two months and counting without a post-suspension hearing. When the Police Board stayed the matter, it also lifted Sgt. Franko's suspension, so he is back at work and earning his pay check. He has not, however, received back pay for his suspension.

Defendant does not dispute that Sgt. Franko has alleged a property interest. It argues, however, that he has not alleged a plausible due process claim. Defendant argues that the hearing Sgt. Franko will one day receive in front of the Police Board is all the due process to which he is entitled.

The Court disagrees and concludes that Sgt. Franko has stated a plausible due process claim. Sgt. Franko alleges that his post-suspension hearing has been stayed indefinitely. He has already waited more than twenty-two months for a post-suspension hearing. Failure to provide an adequately prompt post-suspension hearing can be a due process violation. *See Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 241-42 (1988) ("[T]he district court was properly concerned about the importance of providing prompt post-deprivation procedures in situations in which an agency's discretionary impairment of an individual's property is not preceded by any opportunity for a pre-deprivation hearing."); *Barry v. Barchi*, 443 U.S. 55, 66 (1979) ("In these circumstances, it was necessary that [plaintiff] be assured a prompt postsuspension hearing, one that would proceed and be concluded without appreciable delay."); *Jones v. City of Gary, Ind.*, 57 F.3d 1435, 1444 (7th Cir. 1995) ("Although we hold that [plaintiff's] right to due process of law was protected with a post-suspension hearing, our inquiry does not end there. The post-suspension hearing must assure that [plaintiff] was provided with a 'prompt proceeding and prompt disposition' of the merits of his suspension.") (quoting *Barry*, 443 U.S. at 66). "In determining how long a delay is justified in affording a post-suspension hearing and decision, it

9

is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." *Mallen*, 486 U.S. at 242.

Here, Sgt. Franko's due process claim is plausible, because he alleges a twenty-two month delay to Sgt. Franko's hearing, which is stayed indefinitely. *See D'Acquisto v. Washington*, 640 F. Supp. 594, 618 (N.D. Ill. 1986) ("Two years does strike this court as too long, although it might not be if, for example, the delay was solely for the benefit of the officer involved. . . . This court needs to know not just how long but also why. Until it does, plaintiffs stated a due process claim for delay of evidentiary hearing."). No end to the delay is in sight. Furthermore, the claim is plausible in that much of the delay appears not to be directed solely toward protecting Sgt. Franko's interests or the government's interest in quickly removing police officers from the street when they are accused of violating rules. In the light most favorable to plaintiffs, the Police Board's decision to delay seems directed at protecting the prosecution's case (against the police officer involved in the shooting) from the publicity the Police Board assumes Sgt. Franko's hearing will draw. That may or may not be a sufficiently compelling state interest to warrant such an extended delay, but it would seem not to be if, for example, it were possible for the Police Board to proceed privately now and issue its ruling publicly only after the criminal case against the other officer has been tried. In the meantime, plaintiffs have stated a plausible claim for violation of Sgt. Franko's due process rights.

*Ciechon v. City of Chicago*, 634 F.2d 1055 (7th Cir. 1980), which defendant cites, does not require a different result. In *Ciechon*, the Seventh Circuit considered whether a *pre-*suspension hearing was required for fire fighters accused of violating the defendant's residency

requirement and concluded that it was not. *Ciechon*, 634 F.2d at 1059. The Seventh Circuit did not consider the adequacy of the *post*-suspension hearing. *Ciechon*, 634 F.2d at 1060 (remanding that issue). In this case, the hearing will be a pre-deprivation hearing as to the charge that Sgt. Franko should be separated from service. Sgt. Franko, however, does not seem to be challenging the delay with respect to the separation. Instead, Sgt. Franko is challenging the delay as to the suspension. With respect to the suspension, the Police Board hearing will be a *post*-deprivation hearing, and *Ciechon* did not address that issue.

Sgt. Franko has stated a plausible claim under § 1983 for violation of his Fourth Amendment right to due process. Defendant's motion to dismiss is denied as to Count I.

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss [27]. Count II is dismissed with prejudice.

SO ORDERED.                                    ENTERED: July 23, 2018

_____
**JORGE L. ALONSO**
**United States District Judge**